IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| DENNIS O. WILLIAMS,<br><br>                      Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE,<br><br>                      Defendant. | MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART THE CROSS MOTIONS FOR SUMMARY JUDGMENT<br><br>Case No. 2:17-CV-699 TS DBP<br><br>District Judge Ted Stewart |

This matter is before the Court on Cross Motions for Summary Judgment. For the reasons discussed below, the Court will grant in part and deny in part the Summary Judgment Motions.

## I. BACKGROUND

This case arises out of two Freedom of Information Act ("FOIA") requests made by Plaintiff Dennis O. Williams ("Mr. Williams"). Mr. Williams is a former special agent with the Federal Bureau of Investigation ("FBI") who alleged wrongdoing by various FBI officials.

On July 17, 2015, Mr. Williams submitted a FOIA request to the DOJ Mail Referral Unit (the "Whistleblower Request"). Mr. Williams sought:

> (1) All documents/records that, directly or indirectly, relate to, report on or concern Mr. Williams having been designated a "Whistle Blower" by the Department of Justice's Office of Professional Responsibility and what was done by the Department of Justice and/or the Office of Professional Responsibility to protect him throughout his career with the FBI, including legal opinions, correspondence or other communications to or from the FBI personnel, the General Accounting Office, Office of Special Investigations, Office of Inspector General and/or any member of the Senate Judiciary Committee regarding these matters.

(2) The complete investigative file(s) of the Department of Justice and/or Office of Professional Responsibility concerning Mr. Williams and/or his complaints about corruption within the FBI.[1]

Mr. Williams' request was subsequently forwarded to the Office of Professional Responsibility ("OPR") and the FBI. In response to Mr. Williams' request, OPR provided several documents but withheld 516 pages. The FBI similarly released several pages but withheld 16 pages.

On February 21, 2017, Mr. Williams submitted a second FOIA request (the "Pickard Request"), this one to the Criminal Division of the United States Department of Justice ("Criminal Division"). Mr. Williams requested "any and all records pertaining to any referral to the DOJ Criminal Division for possible prosecution of Thomas Pickard" and "any and all records that pertain to recommendations and his suitability to become an FBI Assistant Director or Acting FBI Director."[2]

On February 27, 2017, the Criminal Division provided a *Glomar* response,[3] stating that it could neither confirm nor deny the existence of records responsive to Mr. Williams' request.[4]

---

[1] Docket No. 2-2, at 1–2.

[2] Docket No. 2-6.

[3] "The *Glomar* response takes its name from the CIA's refusal to confirm or deny the existence of records about the *Hughes Glomar Explorer*, a ship used in a classified [CIA] project to raise a sunken Soviet submarine from the floor of the Pacific Ocean to recover the missiles, codes, and communications equipment onboard for analysis by United States military and intelligence experts." *People for the Ethical Treatment of Animals (PETA) v. Nat'l Insts. of Health*, 745 F.3d 535, 540 (D.C. Cir. 2014) (internal quotation marks and citation omitted).

[4] Docket No. 30-1 Ex. C-2. The Criminal Division has also stated that it would not have records related to Plaintiff's second request—any and all records that pertain to recommendations and his suitability to become an FBI Assistant Director or Acting FBI Director—because making recommendations regarding the suitability of someone to become FBI director is not one of the functions of the Criminal Division. *Id.* Ex. C, at 7 n.1.

Mr. Williams appealed that decision, and it was upheld by the Department of Justice's Office of Information Policy.[5]

Mr. Williams brought this action seeking the 532 withheld pages and a response to the Pickard Request. Both parties now move for summary judgment. The Court previously granted Mr. Williams' Motion for an In Camera Review,[6] and the Court reviewed all the withheld documents.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[7] In considering whether a genuine dispute of material fact exists, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[8] The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[9]

"Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another."[10] "When the parties file cross motions for summary judgment, 'we are entitled to assume that no evidence needs to be considered other than that filed by the

---

[5] *Id.* Ex. C-4.

[6] Docket No. 51.

[7] FED. R. CIV. P. 56(a).

[8] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[9] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

[10] *Buell Cabinet Co., Inc. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979).

parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts.'"[11]

### III. DISCUSSION

"FOIA was enacted to enable the public to examine government records."[12] "The general rule under FOIA is that a person is entitled to copies of a federal agency's records upon making a request that 'reasonably describes such records' and that complies with required procedures for such requests."[13] However, certain categories of records are exempt from disclosure.[14] Relevant here are Exemptions 5, 6, and 7(C).

Exemption 5 exempts from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency."[15] This exemption "protects documents that would be covered by any privilege that an agency could assert in a civil proceeding. One such privilege is the deliberative process privilege, which shields 'documents reflecting advisory opinions, recommendations and deliberations [comprising] part of a process by which governmental decisions and policies are formulated.'"[16] To fall under this exemption, "[p]rivileged documents must be both predecisional and deliberative."[17] Generally, purely factual materials are not privileged under

---

[11] *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (quoting *James Barlow Family Ltd. P'ship v. David D. Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir. 1997)).

[12] *Trentadue v. FBI*, 572 F.3d 794, 796 (10th Cir. 2009).

[13] *Id.* (quoting 5 U.S.C. § 552(a)(3)(A)(i)).

[14] *Id.*

[15] 5 U.S.C. § 552(b)(5).

[16] *Trentadue v. Integrity Comm.*, 501 F.3d 1215, 1226 (10th Cir. 2007) (quoting *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001)).

[17] *Id.* at 1227.

4

the exemption. However, factual materials may be privileged if "(1) they are inextricably intertwined with deliberative materials, or (2) their disclosure would reveal deliberative material."[18]

Exemption 6 exempts "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."[19] "'Similar files' refers broadly to 'detailed Government records on an individual which can be identified as applying to that individual.'"[20] "In determining whether the release of such information would 'constitute a clearly unwarranted invasion of personal privacy,' [the Court] must balance 'the public interest in disclosure against the privacy interest Congress intended the exemption to protect.'"[21] In doing so, the Court "must assess the extent to which disclosure would contribute to the 'public understanding of the operations or activities of the government,' not the interests of the requesting party."[22]

Finally, Exemption 7(C) exempts "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy."[23] "Exemption 7(C) is similar to, but more protective of privacy than, Exemption 6."[24]

---

[18] *Id.* at 1229 (citation omitted).

[19] 5 U.S.C. § 552(b)(6).

[20] *Integrity Comm.*, 501 F.3d at 1232 (quoting *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982)).

[21] *Id.* at 1233 (quoting *Forest Guardians v. FEMA*, 410 F.3d 1214, 1217–18 (10th Cir. 2005)).

[22] *Id.* (quoting *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 495 (1994)).

[23] 5 U.S.C. § 552(b)(7(C).

[24] *Integrity Comm.*, 501 F.3d at 1234.

"Like Exemption 6, under Exemption 7(C) we balance the public's interest in obtaining '[o]fficial information that sheds light on an agency's performance of its statutory duties' against an individual's interest in maintaining privacy."[25] "Disclosure is in the public interest when it is 'likely to contribute significantly to public understanding of the operations or activities of the government.'"[26]

"In considering whether information should be disclosed, two guiding principles apply. First, FOIA is to be broadly construed in favor of disclosure. Second, its exemptions are to be narrowly circumscribed."[27] Moreover, FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt . . . ."[28] With these principles in mind, the Court will consider the respective responses to Plaintiff's FOIA requests.

A. OPR

OPR, relying on Exemption 5 and 6, withheld 516 pages. With respect to Exemption 5 it withheld two categories of documents: (1) attorney notes and emails, and memoranda which reflect the attorney's analysis of Mr. Williams' whistleblower retaliation claim; and (2) documents related to witness interviews conducted in connection with the investigation of Mr. Williams' whistleblower complaint.

As stated, to be covered by Exemption 5, documents must be both predecisional and deliberative. There appears to be no dispute that the withheld documents were predecisional.

---

[25] *Id.* at 1236 (quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S.749, 773 (1989)).

[26] *Id.* (quoting *Reporters Comm.*, 489 U.S. at 775).

[27] *Id.* at 1226 (internal citation omitted).

[28] 5 U.S.C. § 552(b).

Therefore, the question becomes whether they are deliberative. Whether a document is "deliberative" is "difficult to cabin."[29] The Court must separate deliberative material from purely factual materials. As stated, factual materials are not privileged under Exemption 5 unless they are inextricably intertwined with deliberative materials or their disclosure would reveal deliberative materials.

The Tenth Circuit addressed the need for a severability analysis in *Trentadue v. Integrity Committee*. There, the court reviewed a document withheld under Exemption 5. While the court agreed that certain portions of the document were privileged, it required the release of factual material contained in the document that was not inextricably intertwined with the deliberative process and would not expose the deliberative process in any meaningful way. Relevant here, the court found that a recitation of historical facts about an investigation was not protected by Exemption 5.[30]

OPR argues that these documents should be withheld in their entirety for three reasons. First, "documents reflecting an attorney's initial analysis and evaluation of Mr. Williams' whistleblower retaliation claim are plainly internal, as they are intended only for use by OPR personnel."[31] Second, "these notes, emails, and memoranda are predecisional, as they are [sic] created to assist OPR in conducting the investigation and making a final decision as to whether the complaint has stated a claim for retaliation."[32] Third, "the documents are deliberative, as

---

[29] *Integrity Comm.*, 501 F.3d at 1227.

[30] *Id.* (stating that "a significant portion of the letter—almost all of page two—does not reflect Fine's opinions at all; it merely states historical facts about the OIG's investigation").

[31] Docket No. 30, at 17.

[32] *Id.*

they reflect the attorney's thoughts and impressions about the complaint, the investigation, and how to address certain issues."[33]

The parties do not dispute that the withheld documents were created for OPR personnel and are predecisional. The issue here is whether the documents are deliberative in contrast to "purely factual, investigative matters . . . ."[34] The Supreme Court has made clear that Exemption 5 does not protect "memoranda consisting only of compiled factual material or purely factual material contained in deliberative memoranda and severable from its context."[35] Courts also have routinely concluded that Exemption 5 does not apply to interview notes, transcripts, and investigative work products that do not contain an attorney's opinions, rationale, recommendations, or conclusions.[36]

First, some of the documents were properly withheld because they are deliberative and non-segregable. OPR-29 is an email correspondence between two OPR employees discussing

---

[33] *Id.*

[34] *Integrity Comm.*, 501 F.3d at 1227.

[35] *EPA v. Mink*, 410 U.S. 73, 87–88 (1973).

[36] *See, e.g.*, *Poss v. N.L.R.B.*, 565 F.2d 654, 659 (10th Cir. 1977) (concluding that notes taken by an investigator during an interview were not subject to Exemption); *Associated Dry Goods Corp. v. N.L.R.B.*, 455 F. Supp. 802, 809 (S.D.N.Y. 1978) ("Exemption 5 [does] not protect factual material such as statements taken from witnesses interview by NLRB field examiners from disclosure."); *Nat'l Whistleblower Ctr. v. Dep't of Health & Human Servs.*, 849 F. Supp. 2d 13, 38 (D.D.C. 2012) (concluding that handwritten-interview notes were part of the deliberative process where they "contain the author's opinions, analysis, or impressions." But notes that "merely record or summarize factual content from the meetings, calls, or interview . . . must be disclosed."); *Martins v. U.S. Citizenship & Immigration Servs.*, 962 F. Supp. 2d 1106, 1124 (N.D. Cal. 2013) (explaining that "summaries of interviews . . . [do] not fall under the deliberative process privilege . . . ."); *Simons-Eastern Co. v. United States*, 55 F.R.D. 88, 89 (N.D. Ga. 1972) (concluding that the work product of a factual investigation that did not contain the "opinions, reasonings, or conclusions of any government agent" was not exempt under Exemption 5); *Stevens v. U.S. Dep't of Homeland Sec.*, No. 13 C 03382, 2014 WL 5796429, at *12 (N.D. Ill. Nov. 4, 2015) (concluding that interview notes not tied to the adoption of any agency policy were improperly withheld under Exemption 5).

8

strategy and seeking advice on how best to interview a witness. This material is deliberative, non-segregable, and properly withheld. OPR-31, OPR-32, and OPR-33 are handwritten notes recording the author's impressions and opinions of certain events in the Williams investigation. As such, these were properly withheld. OPR-54, OPR-55, and OPR-68 are handwritten notes by an attorney assessing the Williams investigation and strategizing future investigatory means. These too were properly withheld. Finally, OPR-69 was properly withheld because it is an internal memorandum containing the author's recommendations for the investigation's future.

Second, some documents were improperly withheld in full because they contain segregable information. OPR-28 is a chronological summary of Williams' complaint that contains factual statements and the author's conclusions and impressions of certain events. The factual statements are segregable from the author's deliberative commentary and thus OPR should redact the deliberative commentary, redact any personal information under Exemption 6, and release the remainder of this document. OPR-39 primarily contains a factual summary of a witness interview that—subject to Exemption 6—should be disclosed. OPR, however, may withhold the interviewer's commentary on the last page that contains the interviewer's impressions of the witness as those comments are deliberative. OPR-45 is an interviewer's notes that primarily contain factual statements taken from a witness and are therefore not deliberative. The document also contains handwritten notes in the margins that contain the interviewer's thoughts and impressions and are deliberative. OPR-45 was improperly withheld in full and should be produced except for the handwritten notes in the margins.

Finally, most of the documents were improperly withheld under Exemption 5 but should be partially withheld under Exemption 6. The remaining documents not discussed above are

handwritten notes or transcripts of witness interviews.[37]  These documents are factual as they do not contain opinions, rationale, recommendations, or conclusions of the interviewer or author. As such, they should be produced in their entirety except for those portions subject to Exemption 6.  Also, based on the Court's review, it appears that some of these documents contain discussion of classified information.[38]  OPR should review these documents before release and may withhold any classified information under FOIA Exemption 1.

With respect to Exemption 6, OPR withheld the following categories of documents: (1) names of subjects of OPR's investigation into whistleblower retaliation; (2) names of third parties who are not witnesses or subjects in OPR's investigation into Mr. Williams' whistleblower retaliation complaint; (3) internal emails, handwritten notes, or internal memoranda prepared by OPR attorneys which include the names of witnesses or potential witnesses to OPR's investigation; and (4) attorney-prepared outlines for witness interviews, attorney notes of confidential witness interviews, and confidential transcripts of witness interviews.

In analyzing Exemption 6, the Court must balance the public interest in disclosure against the privacy interest Congress intended the exemption to protect.  "The 'public interest' to be weighed in Exemption 6's balancing test is the extent to which disclosure would serve the 'core purpose' of FOIA."[39]  "The core purpose of FOIA is, of course, to contribute to the 'public understanding of the operations or activities of the government.'"[40]  "The type of privacy

---

[37] These include OPR documents 27, 30, 34–38, 40–44, 46–53, 56–66.

[38] For example, OPR-59 contains information that FBI interviewers deemed classified.

[39] *Forest Guardians*, 410 F.3d at 1218 (quoting *Fed. Labor Relations Auth.*, 510 U.S. at 495).

[40] *Id.* (quoting *Fed. Labor Relations Auth.*, 510 U.S. at 495).

interests Congress intended to protect under Exemption 6 'encompass[ ] the individual's control of information concerning his or her person.'"[41]  "Such private information includes, for example, an individual's name and home address."[42]

In *Trentadue v. Integrity Committee*, the Tenth Circuit made clear that determining whether disclosure is protected by Exemption 6 is highly fact specific.  There, the court found that the identities of four low-level employees were protected from disclosure because disclosing their names would shed little light on the operation of government.[43]  However, the court noted that "[t]he public interest in learning of a government employee's misconduct increases as one moves up an agency's hierarchical ladder."[44]  Further, where the names of individuals had already been disclosed in the public record, there was less chance of a clearly unwarranted invasion of privacy.[45]

Moreover, while Exemption 6 protects the disclosure of the identity of a particular individual, "an agency must still disclose the fact that somebody was accused of misconduct and what steps, if any, were subsequently taken."[46]  Although the Government may be able to withhold the names of witnesses and subjects of the investigation, it must still release all reasonably segregable material.

Here, Defendant relies on Exemption 6 to withhold the bulk of the 516 withheld pages and argues that Exemption 6 protects both the identity of individuals mentioned during Mr.

---

[41] *Id.* (quoting *Fed. Labor Relations Auth.*, 510 U.S. at 500).

[42] *Id.*

[43] *Integrity Comm.*, 501 F.3d at 1234.

[44] *Id.*

[45] *Id.*

[46] *Id.* at 1233–34.

11

Williams' investigation and all documentation related thereto.[47]  This use of Exemption 6 is legally incorrect, overbroad, and swallows FOIA's general rule favoring disclosure.  Defendant is correct that the OPR documents contain the names of unnoteworthy individual witnesses, low-level governmental employees, and other obscure individuals who have a strong privacy interests in not having their identity revealed.  For example, in OPR-34 the name and phone number of a witness that called the FBI regarding Mr. Williams should be redacted.  Mr. Williams has not advanced any argument about why these obscure individuals' names are of any interest to the public.   For these reasons, the Court concludes that the names of low-level governmental employees, witnesses, and other individuals whose identities would shed little light on the operation of government should be withheld.  Defendant, however, incorrectly assumes that because these individuals have a privacy interest, all outlines, notes, and transcripts related to those individuals are also protected.[48]  Interestingly, Defendant makes no argument about why all documentation related to these individuals should also be withheld, or why redacting the protected individuals' names is insufficient to protect the individuals' privacy interest.  The Supreme Court has made clear that this Court is to conduct a severability analysis to determine which portions of the withheld documents may be produced while still protecting the identities of individuals pursuant to Exemption 6.  In line with these principles, the Court concludes that the names of low-level governmental employees, witnesses, and other individuals whose identities would shed little light on the operation of government should be withheld, and all other segregable information should be produced.

---

[47] *See* Docket No. 30, at 19.
[48] *See id.*

B.  FBI

In response to Mr. Williams' Whistleblower Request, the FBI withheld 16 pages, relying on Exemption 6 and 7(C). The 16 pages were retrieved from an FBI criminal investigative file pertaining to third parties who were subjects of an FBI investigation, though ultimately not prosecuted. The pages were attached to a report Mr. Williams provided as background information for a Performance Appraisal Self-Assessment in order to detail his work. The Performance Appraisal Self-Assessment, along with this attachment, were then included in the whistleblower investigation file.

In evaluating whether information is covered by Exemption 7(C), "[a] court must (1) determine if the information was gathered for a law enforcement purpose; (2) determine whether there is a personal privacy interest at stake; and if there is (3) balance the privacy interest against the public interest in disclosure."[49]

On the first element, the Declaration of Michael G. Seidel states that the withheld pages "were compiled in the course of an FBI investigation of subjects for possible violations of federal crimes, specifically Securities and Commodities Fraud. Thus, the information in these records was compiled for law enforcement purposes . . . ."[50]

Mr. Williams responds to this statement in two ways. First, Mr. Williams argues that, based on this description, these documents are unrelated to his FOIA request. This appears to be a tacit admission that these documents are not responsive to his request and, therefore, were properly withheld. However, he has not formally withdrawn his request as to these documents. Second, Mr. Williams objects to Mr. Seidel's declaration, arguing that his statements cannot be

---

[49] *World Publ'g Co. v. U.S. Dep't of Justice*, 672 F.3d 825, 827 (10th Cir. 2012).
[50] Docket No. 30-1 Ex. B ¶ 21.

presented in a form that would be admissible at trial. Mr. Williams asserts that Mr. Seidel's statements are conclusory and are not based on his personal knowledge. However, this argument is belied by Mr. Seidel's Declaration in which he details his personal knowledge of the procedures followed by the FBI in responding to FOIA requests and this request in particular. Therefore, Mr. Williams' argument must be rejected.

Even disregarding Mr. Seidel's Declaration, the Tenth Circuit has adopted a per se rule that "all records and information compiled by an agency . . . whose primary function is law enforcement, are 'compiled for law enforcement purposes' for purposes of Exemption 7."[51] "The FBI is such an agency."[52] Thus, these records were compiled for law enforcement purposes.[53]

Next, the Court considers whether there is a personal privacy interest at stake. "Numerous courts of appeals have recognized that individuals involved in a criminal investigation—including suspects, witnesses, interviewees, and investigators—possess privacy interests, cognizable under Exemption 7(C), in not having their names revealed in connection with disclosure of the fact and subject matter of the investigation."[54] The Tenth Circuit has stated that "[i]dentities of third parties interviewed and third parties whose names surface in a criminal investigation have been recognized as excludible under Exemption 7(C) in order to prevent embarrassment and harassment and to enable the FBI to gather the information it

---

[51] *Jordan v. U.S. Dep't of Justice*, 668 F.3d 1188, 1197 (10th Cir. 2011).

[52] *Curran v. Dep't of Justice*, 813 F.2d 473, 475 (1st Cir. 1987).

[53] *Jordan*, 668 F.3d at 1198.

[54] *Landano v. U.S. Dep't of Justice*, 956 F.2d 422, 426 (3d Cir. 1992), *vacated on other grounds*, 508 U.S. 165 (1993).

needs."[55] Based upon this, the Court finds that individuals named in the withheld documents have a personal privacy interest at stake.

Finally, the Court must balance the privacy interest against the public interest in disclosure. As stated, disclosure is in the public interest when it is likely to contribute significantly to public understanding of the operations or activities of the government. Mr. Williams argues that there is a strong public interest in knowing if public servants are engaged in misconduct. While this may be true, there is nothing contained in the 16 pages withheld by the FBI that would shed any light on such conduct. Rather, as discussed, these documents relate to investigations for securities and commodities fraud. The Supreme Court requires a FOIA requester to demonstrate that the requested "information is likely to advance [the public] interest. Otherwise, the invasion of privacy is unwarranted."[56] Mr. Williams has not made this showing. Therefore, they were properly withheld.

For substantially the same reasons, these documents were also properly withheld under Exemption 6.

C.   DOJ Criminal Division

Mr. Williams made the Pickard Request on February 21, 2017. He requested "any and all records pertaining to any referral to the DOJ Criminal Division for possible prosecution of Thomas Pickard" and "any and all records that pertain to recommendations and his suitability to become an FBI Assistant Director or Acting FBI Director."[57] As stated, the Criminal Division responded to the Pickard Request with a *Glomar* response.

---

[55] *Hale v. U.S. Dep't of Justice*, 973 F.2d 894, 901–02 (10th Cir. 1992), *vacated on other grounds*, 509 U.S. 918 (1983).

[56] *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004).

[57] Docket No. 2-6.

The Court ordered the Criminal Division to conduct a search for documents responsive to the Pickard Request and to supplement its response based upon that search.[58] The Criminal Division conducted a search for responsive documents to the Pickard Request and indicated that "no records related to Thomas Pickard were located."[59] Mr. Williams has not challenged the Criminal Division's search, and therefore the Court finds that the Criminal Division's response to the Pickard Request satisfies Mr. Williams' request. For these reasons, Mr. Williams' Pickard Request arguments are moot.

## IV. CONCLUSION

In sum, the Government properly withheld OPR documents 29, 31-33, 54-55, and 68-69, and all 16 FBI pages. Accordingly, it is ORDERED that the government produce the following previously withheld documents:

1) OPR-28 but the Government may redact the author's deliberative commentary and any named individuals pursuant to Exemption 6;
2) OPR-39 but the Government may redact the interviewer's commentary on the last page and any named individuals pursuant to Exemption 6;
3) OPR-45 but the Government may redact the handwritten commentary in the margins and any named individuals pursuant to Exemption 6;
4) OPR documents 27, 30, 34-38, 40-44, 46-53, and 56-66 but the Government may redact any named individuals, pursuant to Exemption 6 and any discussion of classified material pursuant to Exemption 1. In OPR-34, the Government should redact the name and phone number of the witness that called the FBI regarding Mr. Williams pursuant to Exemption 6.

Based on the above, the Cross Motions for Summary Judgment (Docket Nos. 30 & 35) are GRANTED in part and DENIED in part.

---

[58] *See* Docket No. 51, at 1.
[59] *See* Docket No. 53, at 1.

DATED December 9, 2019.

BY THE COURT:

_____

Ted Stewart

United States District Judge